UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES LOPEZ, ) | Case No. CV 04-9976-RC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Dolores Lopez filed a complaint on December 13, 2004, seeking review of the Commissioner's decision denying her applications for disability benefits.  The Commissioner answered the complaint on June 6, 2005, and the parties filed a joint stipulation on December 22, 2005.

**BACKGROUND**

**I**

On August 21, 2001, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and under the Supplemental Security Income ("SSI") program of

Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since October 28, 1988, due to multiple physical and mental complaints.[1]  Certified Administrative Record ("A.R.") 94-96, 114, 121, 287-89.  The plaintiff's application was denied on February 6, 2002, and was again denied on October 7, 2002, following reconsideration.  A.R. 66-74, 291-94.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge David J. Agastein ("the ALJ") on April 15, 2004.  A.R. 30-63, 75.  On April 30, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 14-27.  The plaintiff appealed this decision to the Appeals Council, which denied review on October 13, 2004.  A.R. 6-12.

**II**

The plaintiff, who was born on September 8, 1947, is currently 58 years old.  A.R. 34, 94, 287.  She has a high school education and has previously worked as a clerk for the California Department of Motor Vehicles.  A.R. 35, 115, 120, 142-49, 266.

Between March 22 and August 28, 2002, plaintiff received medical treatment at the BAART La Puente clinic, where she was diagnosed with type II diabetes mellitus,[2] hypertension, hypercholesteremia, obesity

---

[1] Although plaintiff has both physical and mental complaints, she mainly challenges the ALJ's assessment of her physical impairments; therefore, the Court will not discuss plaintiff's mental complaints.

[2] Type II diabetes mellitus, also known as non-insulin-dependent diabetes mellitus, is "characterized by peak age of onset between 50 and 60 years, gradual onset with few symptoms of metabolic disturbance. . . , and no need for exogenous insulin; dietary control with or without oral hypoglycemics is usually

and chronic pain - myalgia. A.R. 236-53. By July 24, 2002, plaintiff's diabetes was stable with medication, but on August 28, 2002, her diabetes and hypertension were reported to be uncontrolled due to her poor compliance with medication. A.R. 236-37.

On October 23, 2002, plaintiff began treatment with James R. Stewart, M.D., who diagnosed her as having hyperlipidemia[3] and uncontrolled diabetes mellitus, with near syncopal[4] episodes apparently stemming from plaintiff's failure to obtain needed medication because she could not afford it. A.R. 254. Electromyography and nerve conduction velocity studies of both of plaintiff's lower extremities taken April 17, 2003, showed mild sensory neuropathy[5] and increased insertional activity at the L5-S1 paraspinal muscles bilaterally, that may reflect mild degenerative changes or foraminal stenosis[6] at L5-S1. A.R. 278-79. A lumbar spine CT-scan taken May 9,

//

---

effective. Obesity and genetic factors may also be present." Dorland's Illustrated Medical Dictionary, 489-90 (29th ed. 2000).

[3] Hyperlipidemia is "a general term for elevated concentration of any or all of the lipids in the plasma." Dorland's Illustrated Medical Dictionary at 852.

[4] Syncope is "a temporary suspension of consciousness due to generalized cerebral ischemia; a faint or swoon." Id. at 1747.

[5] Neuropathy is "a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown." Dorland's Illustrated Medical Dictionary at 1212.

[6] Stenosis is "an abnormal narrowing of a duct or canal." Id. at 1698.

3

1  //
2  2003, showed moderate to severe spinal stenosis[7] at all levels, most
3  marked at the L2-L3 and L3-L4 levels, due to excessive hypertrophy[8] of
4  the facet joints and osteophyte formation,[9] and annular disc bulging
5  at L3-L4 and L4-L5 levels.  A.R. 283.  Cervical spine x-rays taken
6  August 12, 2003, showed extensive arthritic changes at the C4-5, C5-6,
7  and C6-7 levels, all anterior in nature and compatible with Forestier
8  disease.[10]  A.R. 282.  A CT-scan of the lumbar spine taken October 23,
9  2003, revealed moderate central stenosis at the L2-L3, L3-L4 and L4-L5
10 levels with bilateral foraminal stenosis at all three levels, mild-to-
11 moderate foraminal stenosis bilaterally at L5-S1, diffuse osteophyte
12 formation at the disc spaces contributing to the central and foraminal
13 stenosis, and bilateral facet joint disease throughout the lumbosacral
14 spine.  A.R. 280.  Left foot x-rays also taken October 23, 2003,
15 revealed bone spurring in the plantar surface of the calcaneus.  A.R.
16 281.

---

[7]  Spinal stenosis is "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of the bone upon the space; symptoms are caused by compression of the cauda equina and include pain, paresthesias, and neurogenic claudication."  Dorland's Illustrated Medical Dictionary at 1698.

[8]  Hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells."  Id. at 859.

[9]  An osteophyte is "a bony excrescence or osseous outgrowth."  Id. at 1290.

[10]  Forestier disease is "hyperostosis [hypertrophy of bone] of the anterolateral vertebral column, especially in the thoracic region."  Dorland's Illustrated Medical Dictionary at 515, 854.

4

On April 2, 2004, Dr. Stewart opined:

> [Plaintiff] has multiple medical problems, which make her unable to work. She has Central Foraminal Stenosis of the lumbar spine, Rheumatoid Arthritis[11] and Diabetes Mellitus Non-insulin Dependent with Diabetic Neuropathy. Due to the above-noted conditions, [plaintiff] cannot stand for prolong[ed] periods of time. She also has chronic lower back pain and leg pain for which she takes medications that cause her drowsiness and slow mental response.

A.R. 277 (footnote added). On June 29, 2004, Dr. Stewart further opined that plaintiff has "multiple medical problems" and "cannot seek any type of gainful employment" because she has "trouble sitting, standing, walking, bending, and climbing for any long periods of time," and plaintiff is unable to lift 25 to 50 pounds for any prolonged period of time. A.R. 13. Dr. Stewart concluded plaintiff "needs to be put through a rigorous testing to prove her physical condition." Id.

On June 25, 2003, Mark Borigini, M.D., a consultative internist and rheumatologist, examined plaintiff and diagnosed her as having,

---

[11] Rheumatoid arthritis is "a chronic systemic disease primarily of the joints, usually polyarticular, marked by inflammatory changes in the synovial membranes and articular structures and by muscle atrophy and rarefication of the bones. In late stages deformity and ankylosis [immobility and consolidation of a joint due to disease, injury, or surgical procedure] develop." Dorland's Illustrated Medical Dictionary at 91, 151.

5

among other conditions, chronic pain syndrome, a history of diabetes and hypertension, obesity, varicose veins, left biceps tendinitis, and left subacromial bursitis. A.R. 267-71. Dr. Borigini further opined that plaintiff "may have a fibromyalgia-type syndrome."[12] A.R. 270. Finally, Dr. Borigini opined:

> [Plaintiff] is able to stand, walk and sit for 6 hours out of an 8-hour workday with appropriate breaks. She is able to bend and crouch. She is able to do fine and gross manipulation with her hands. I do not see any limitations in her lifting except for general strength, as her shoulder discomfort did not seem terribly debilitating.

A.R. 271-75. More specifically, plaintiff can occasionally lift and/or carry up to 50 pounds, and frequently lift and/or carry up to 25 pounds, climb, balance, kneel, crouch, crawl, and stoop. A.R. 272-

---

[12] Fibromyalgia, previously called fibrositis, is:

> a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).

73.

//

Medical expert William J.L. Cable, M.D., testified at the administrative hearing.  He agreed that plaintiff has spinal stenosis, osteoarthritis of the cervical spine, a bone spur on her foot, adult onset diabetes, obesity, mild diabetic sensory neuropathy, and diffuse varicose veins, among other conditions.  A.R. 47-63.  However, Dr. Cable opined plaintiff should be able to perform medium work,[13] provided it is limited to simple repetitive tasks and moderately reduced exposure to the public.  A.R. 56, 58-59.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision.  Burch v. Barnhart, 400 F.3d 676, 678 (9th Cir. 2005); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§

---

[13] Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

7

423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Initially, the ALJ determined plaintiff is not eligible for Title II benefits. A.R. 17-18. Considering plaintiff's application for SSI

benefits, the ALJ found plaintiff has not engaged in substantial gainful activity since August 9, 2001.  (Step One).  The ALJ then found plaintiff has several "severe" impairments, including spinal stenosis, cervical spine osteoarthritis, left calcaneal bone spurs, chronic pain syndrome, varicose veins, hypertension, diabetes mellitus and obesity (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff has no past relevant work. (Step Four).  Finally, based on a vocational expert's testimony, the ALJ found plaintiff can perform a significant number of jobs in the national economy, including work as a hand packer, warehouse worker, and a day worker; therefore, she is not disabled.  (Step Five).

**IV**

When a Title II claimant's period of eligibility for disability benefits expires on a specific date, it is the claimant's burden to prove she was either permanently disabled or subject to a condition that became so severe as to disable her **prior** to that date.  Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998); Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  In this case, plaintiff's insured status for Title II disability benefits expired on December 31, 1993.  A.R. 17-18, 25.  Thus, to be eligible for disability benefits under Title II, plaintiff must prove she was either permanently disabled or subject to a condition which became so severe as to disable her prior to that date[,]" Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Armstrong, 160 F.3d at 589, and any deterioration after the expiration of the period of Title II eligibility does not assist plaintiff.  Johnson v. Shalala, 60 F.3d

1428, 1434 (9th Cir. 1995); Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989).

Here, the ALJ found that plaintiff's medical records do not date back to December 31, 1993; thus, "there is no evidence to determine disability on or before that date [and plaintiff] . . . is not eligible for [Title II benefits]." A.R. 18. Further, in a questionnaire, plaintiff indicated she did not begin to experience pain until 1997. A.R. 162. Therefore, the ALJ's finding that plaintiff is not eligible for disability benefits under Title II is supported by substantial evidence in the record.

V

In considering plaintiff's application for SSI disability benefits, the ALJ determined plaintiff has the residual functional capacity ("RFC") to perform medium work, with some limitations;[14] thus, she can perform a substantial number of jobs in the national economy. A.R. 26. Specifically, the ALJ found:

> [Plaintiff] has the [RFC] to perform a significant range of medium exertional level work. She is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, sit, stand, and/or walk for about six hours in an eight-hour workday with frequent postural limitations, and she is

---

[14] A claimant's RFC is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989)

10

1  limited to simple, repetitive tasks that involve little or
2  no public contact.
3 //
4
5 A.R. 26.  However, plaintiff contends, in part, that the ALJ's RFC
6 finding is not supported by substantial evidence because the ALJ
7 improperly rejected the opinions of her treating physician, Dr. James
8 R. Stewart.  The plaintiff is correct.
9
10      The medical opinions of treating physicians are entitled to
11 special weight, Reddick, 157 F.3d at 725; Embrey v. Bowen, 849 F.2d
12 418, 421 (9th Cir. 1988), since the treating physician "is employed to
13 cure and has a greater opportunity to know and observe the patient as
14 an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
15 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see
16 also 20 C.F.R. § 416.927(d)(2) (generally providing more weight is
17 given to treating sources "since these sources are likely to be the
18 medical professionals most able to provide a detailed, longitudinal
19 picture of your medical impairment(s). . . .").  Therefore, the ALJ
20 must provide clear and convincing reasons for rejecting the
21 uncontroverted opinion of a treating physician, Bayliss v. Barnhart,
22 427 F.3d 1211, 1216 (9th Cir. 2005); Benton v. Barnhart, 331 F.3d
23 1030, 1036 (9th Cir. 2003), and "[e]ven if [a] treating doctor's
24 opinion is contradicted by another doctor, the ALJ may not reject this
25 opinion without providing 'specific and legitimate reasons' supported
26 by substantial evidence in the record."  Reddick, 157 F.3d at 725;
27 Bayliss, 427 F.3d at 1216.
28

1 In 2004, Dr. Stewart opined that plaintiff is unable to work due
2 to multiple medical problems, including central foraminal stenosis of
3 the lumbar spine, rheumatoid arthritis, and noninsulin dependent
4 diabetes mellitus, she is unable to lift 25 to 50 pounds for prolonged
5 periods of time, and she has trouble sitting, standing, walking,
6 bending, and climbing for any long periods of time. A.R. 13, 277.[15]
7 Yet, in finding plaintiff retains the RFC to perform "a significant
8 range of medium exertional level work[,]" the ALJ implicitly rejected
9 Dr. Stewart's opinions -- without providing any reason for rejecting
10 them. See A.R. 26. This is legal error. Smolen, 80 F.3d at 1286;
11 Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Although the
12 Commissioner now posits several reasons why the ALJ might have
13 rejected Dr. Stewart's opinions, this Court "cannot affirm the
14 decision of an agency on a ground that the agency did not invoke in
15 making its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir.
16 2001); Ceguerra v. Secretary of Health & Human Servs., 933 F.2d 735,
17 738 (9th Cir. 1991). Thus, the ALJ's RFC determination is not
18 supported by substantial evidence.

---

[15] Dr. Stewart's opinions were presented in two letters, one of which was provided to the ALJ and the other of which was sent to the Appeals Council. A.R. 8, 13, 33, 277. Since "the Appeals Council affirmed the decision of the ALJ denying benefits to [plaintiff, the additional] evidence is part of the record on review to this court." Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.), cert. denied, 519 U.S. 881 (1996); Bustamante v. Massanari, 262 F.3d 949, 952 (9th Cir. 2001); see also 20 C.F.R. § 416.1470(b) (stating "[i]f new and material evidence is submitted [to the Appeals Council, it] shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.").

12

**VI**

When the ALJ's decision is based on legal error or is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Benecke, 379 F.3d at 595 (citations omitted). Here, remand is appropriate so the ALJ can properly assess Dr. Stewart's opinions.[16] Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted, in part, and denied in part; (2) the Commissioner's decision finding plaintiff not eligible for Title II benefits under 42 U.S.C. § 423 is affirmed; and (3) the Commissioner's decision finding plaintiff not eligible for SSI benefits under 42 U.S.C. § 1382(a) is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

---

[16] The Court need not address plaintiff's remaining claims, neither of which would provide plaintiff with any greater relief than granted herein.

R&R-MDO\04-9976.MDO
2/2/06

DATE: February 2, 2006                              /s/ Rosalyn M. Chapman
                                                      ROSALYN M. CHAPMAN
                                                UNITED STATES MAGISTRATE JUDGE